UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Delaneo-Nathaniel Tillman:El, | File No. 25-CV-02811 (JMB/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| U.S. Bank National Association; Kayak Properties, Inc.; and John Does 1–5, | |
| Defendants. | |

---

This matter is before the Court on self-represented Plaintiff Delaneo-Nathaniel Tillman:El's motion for an *ex parte* temporary restraining order (TRO) against Defendants U.S. Bank National Association (U.S. Bank) and Kayak Properties, Inc. (Kayak). (Doc. No. 3.) For the reasons explained below, the Court denies the motion.

## BACKGROUND

Tillman:El bought a house in Brooklyn Park, Minnesota. He did not pay the mortgage on the house; consequently, the house was put into foreclosure. In February 2024, Tillman:El filed suit against U.S. Bank (his mortgage servicer) in Hennepin County District Court to "stop a foreclosure sale, [and] also to collect a monetary award in the amount of $4 Million." *Tillman v. U.S. Bank National Association*, No. 27-CV-24-2604, Index #1 (Minn. Dist. Ct. Feb. 16, 2024). The basis for his lawsuit was the alleged existence of a federal land patent on the property, which, according to Tillman:El, would preclude U.S. Bank from foreclosing on the house. *See id.* Within a few months, however, the Court granted U.S. Bank's motion for judgment on the pleadings on grounds that

1

Tillman:El had failed to state a claim; the matter was dismissed with prejudice.[1] *Id.*, Index #27.

Ultimately, in May 2024, the home was sold to U.S. Bank, which had previously also acted as the servicer of Tillman:El's mortgage. (Doc. No. 1-3 at 22–23.) U.S. Bank later conveyed the property by warranty deed to Kayak Properties in February 2025. However, as of the date of this Order, Tillman:El remains in physical possession of the property.

In February 2025, Kayak commenced eviction proceedings against Tillman:El in Hennepin County District Court to obtain possession of the property. *Kayak Props., Inc. v. Tillman*, No. 27-CV-25-2200, Index #2 (Minn. Dist. Ct. Feb. 4, 2025). Tillman:El revived his argument regarding the federal land patent but also introduced new arguments regarding the unlawfulness of the underlying foreclosure, including that he had satisfied his mortgage debt by presenting U.S. Bank with a handwritten Form-1099C for Cancellation of Debt. In Tillman:El's view, by mailing this document to U.S. Bank, he was no longer required to pay his mortgage, U.S. Bank could not foreclose on the house, and Kayak could not take possession. Ultimately, the state court granted summary judgment in Kayak's favor. On July 9, 2025, the state court issued a writ of recovery of premises directing that, within thirty days, the "Sheriff shall remove [Tillman:El] from the premises, using the force of the County if necessary, and return the premises to [Kayak

---

[1] Afterward, Tillman:El sought to remove the lawsuit to this District. *See Tillman v. U.S. Bank National Association*, No. 25-CV-0902 (NEB/DTS) (D. Minn.). The matter was summarily remanded days later as improperly removed.

Properties] according to the procedure set out in Minn. Stat. § 504B.365." *Id.*, Index #30 (Minn. Dist. Ct. July 9, 2025). As a result, Tillman:El's removal from the property appears to be imminent.

Then, on July 9, 2025, the same day that the writ of recovery issued, Tillman:El filed this action against U.S. Bank, Kayak, and five unnamed John Doe defendants. (Doc. No. 1.) In his Complaint, Tillman:El alleges that the defendants violated his due process rights under 42 U.S.C. § 1983; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1962 *et seq.*; various federal executive orders; and state law.[2]

## DISCUSSION

Tillman:El has moved for an "immediate" TRO[3] requesting that the court stop the Defendants from evicting him or taking any other adverse action against him while this lawsuit is pending. (Doc. No. 3.) When considering whether to grant a motion for emergency injunctive relief, courts consider the following four familiar factors from *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981): "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* at 114. The burden of

---

[2] Tillman:El also invokes a fourth federal-law provision, the Declaratory Judgment Act, 28 U.S.C. § 2201, but the Declaratory Judgment Act "does not create any new substantive right but rather creates a procedure for adjudicating existing rights." *W. Cas. & Sur. Co. v. Herman*, 405 F.2d 121, 124 (8th Cir. 1968) (citations omitted).

[3] The Court construes Tillman:El's characterization of his motion as requesting an *ex parte* TRO under Federal Rule of Civil Procedure 65(b)(1).

establishing every factor belongs to the movant—here, Tillman:El. *E.g.*, *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). Generally, no one factor is determinative, and courts "should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (quotation omitted).

For the reasons discussed below, the Court will deny the motion because Tillman:El has not made a sufficient showing on his probable success on the merits or that the alleged harm he may suffer by eviction is irreparable.[4]

### A. Probability of Success on the Merits

The Court first considers how likely it is that Tillman:El will prevail on the merits of his underlying claims. *Dataphase*, 640 F.2d at 114. Some courts regard this factor as the "most significant" to the Court's ultimate determination whether to grant a motion for injunctive relief. *CPI Card Grp. v. Dwyer*, 294 F. Supp. 3d 791, 807 (D. Minn. 2018).

First, in his section 1983 claim, Tillman:El asserts that his federal constitutional right to due process was violated by Defendants. However, Tillman:El does not describe or show with any specificity how the processes used to effect the foreclosure and eviction

---

[4] The Court also acknowledges a procedural hurdle to granting Tillman:El's requested motion for an "immediate" TRO. (Doc. No. 3 at 2.) Federal Rule of Civil Procedure 65 provides that the Court may not issue an emergency *ex parte* TRO unless the movant "certifies in writing any efforts made to give notice" to the adverse parties "and the reasons why [prior notice before the TRO issues] should not be required." Fed. R. Civ. P. 65(b)(1)(B). Tillman:El has made no such certifications. (*See* Doc. Nos. 2, 3.)

4

were constitutionally inadequate. Furthermore, and even more problematic for Tillman:El's section 1983 claim, the law is well settled that "[o]nly a state actor can face § 1983 liability." *Doe v. N. Homes, Inc.*, 11 F.4th 633, 637 (8th Cir. 2021). Here, none of the Defendants are alleged to be state actors. Therefore, there is no colorable basis upon which Tillman:El could be entitled to relief under section 1983; this claim is unlikely to succeed.

Second, the Court reaches a similar conclusion regarding Tillman:El's FDCPA. The crux of the FDCPA claim is that Tillman:El's mortgage debt was satisfied when he mailed a Form-1099C for Cancellation of Debt to U.S. Bank, and that any subsequent action taken by anyone resulting from the delinquency on the debt (i.e., initiating foreclosure or eviction proceedings) would therefore constitute an unfair debt collection practice. This argument, however, lacks merit. A Form 1099-C is not an instrument for *paying* debt; rather, it is an instrument for *reporting* debt that has been cancelled to the Internal Revenue Service so that the beneficiary may be taxed appropriately. A debtor cannot unilaterally excuse himself from his financial obligations by writing out a Form 1099-C and sending it to his creditor, and doing so does not render subsequent attempts to collect on the debt unlawful. Further, there is no other reason to believe that Tillman:El's debt is invalid (in fact, the issue has already been litigated in state court), and Tillman:El's FDCPA claim depends entirely upon the supposed satisfaction of his debt to U.S. Bank. (*See* Doc. No. 1 ¶ 24 ("U.S. Bank failed to validate debt and disregarded discharge instruments, violating [the FDCPA and state law].").) Tillman:El does not otherwise allege or assert that Defendants

have stepped outside the boundaries of what the FDCPA permits with respect to the collection of a lawful debt. The FDCPA claim is very unlikely to succeed.

Further, Tillman:El's arguments that Executive Orders 14191, 14192, 14219, and 13892 entitle him to relief from eviction are also very unlikely to succeed. Executive orders generally "are not judicially enforceable in private civil suits." *In re Surface Mining Regul. Litig.*, 627 F.2d 1346, 1357 (D.C. Cir. 1980). Even if the executive orders referenced by Tillman:El were judicially enforceable in a private lawsuit such as this (and none appears to be), none of the four executive orders cited by Tillman:El has any relevance whatsoever to the issues in dispute in this action. Thus, any claim premised on an alleged violation of an executive order is unlikely to succeed.

As noted above, the Court has determined that Tillman:El is very unlikely to succeed on any of his federal claims. And because there is no reason to believe that the Court has original jurisdiction over his various state-law claims, *see* 28 U.S.C. § 1332(a), the Court will decline to exercise supplemental jurisdiction over those claims. *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 726–27 (8th Cir. 2008). Therefore, the Court need not consider whether the various state-law claims are likely to succeed when it has already concluded the federal claims will not.

Thus, Tillman:El has not shown that he is likely to succeed on the merits of his lawsuit.

### B.    Irreparable Harm

The Court also considers whether Tillman:El will experience irreparable harm if the requested relief—halting the execution of the writ of recovery that issued from the eviction

action—is not ordered. "[T]he basis of injunctive relief in the federal courts has always been irreparable harm and the inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) (quotation omitted).

Here, Tillman:El may imminently be the subject of a sheriff's enforcement of a writ of recovery issued by the Hennepin County District Court. Eviction from a home "likely constitutes a significant harm." *Allen v. Wilford & Geske*, No. 10-CV-4747 (JRT/JSM), 2010 WL 4983487, at *3 (D. Minn. Dec. 2, 2022). However, the Court notes that Tillman:El waited a substantial amount of time before seeking the injunctive relief he now requests. Waiting to seek injunctive relief "vitiates much of the force of . . . allegations of irreparable harm." *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977). For example, in *Watts v. Federal Home Loan Mortgage Corp.*, No. 12-CV-0692 (SRN/JSM), 2012 WL 1901304 (D. Minn. May 25, 2012), the Court concluded that a plaintiff's delay in seeking relief from an impending eviction "undermine[d] any contention that he will be irreparably harmed absent an injunction." *Id.* at *4. In that case, a defendant commenced—and succeeded in—state-court foreclosure eviction proceedings to remove the plaintiff from the foreclosed property. *Id.* at *1. In a federal court suit commenced days later, the plaintiff alleged that the defendant had improperly foreclosed on his property because the underlying mortgage was "null and void" and the debt had been fully discharged. *Id.* at *1. The plaintiff also filed a TRO to stop his physical removal from the property only *after* his property had been foreclosed on, eviction proceedings commenced and had been resolved in his opponent's favor, and the state court issued a writ of recovery. *Id.* at *4. The Court concluded that any contention of irreparable harm was undercut by

7

the plaintiff choosing to wait "until the eve of his eviction from the property to bring his request for injunctive relief." *Id.*

Here, too, despite knowing that time was of the essence, Tillman:El waited to bring a motion for injunctive relief with this Court until after the foreclosure proceedings concluded, after the eviction proceedings commenced and resolved in Kayak's favor over a period of five months, and after the state court issued a writ of recovery that authorized law enforcement to physically remove Tillman:El from the property. Nothing suggests that Tillman:El was unable to bring this action and this motion sooner.

Further, Tillman:El argues that he "will suffer irreparable harm through imminent eviction, deprivation of shelter, destruction of records and property, and the unlawful clouding of title." (Doc. No. 3 at 2.) However, Tillman:El has not shown that deprivation of shelter cannot be compensated with an award of damages. *Allen*, 2010 WL 4983487, at *3. Further, Tillman has not described why his physical removal from the premises will result in the "destruction of records and property"; as in any action, individuals may remove their personal property from the premises before their forced physical removal from the premises (indeed, Tillman:El could take action to preserve records and property before his removal from the premises) and after (property owners are required to store property for evicted individuals for a period of time after eviction, Minn. Stat. § 504B.365, subd. 3). Finally, Tillman:El's concerns about the "unlawful clouding of title" implicates a past harm. Eviction proceedings determine only lawful *possession* of property do not impact title; the 2024 foreclosure proceedings, which have since concluded, impacted the property's title. Past harms cannot support the grant of injunctive relief. *Miller v.*

*Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1015 n.3 (8th Cir. 2021) (observing that "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without" the injunction).

Thus, the Court cannot conclude that Tillman:El will face irreparable future harm that cannot be redressed with monetary damages.

Because Tillman:El has not made a sufficient showing on the probability-of-success factor and irreparable-harm factors, the Court need not consider the remaining *Dataphase* factors. The motion for a TRO is denied.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT: Plaintiff Delaneo-Nathaniel Tillman:El's motion for a temporary restraining order (Doc. No. 3) is DENIED.


Dated: July 10, 2025                              /s/ *Jeffrey M. Bryan*
                                                  Judge Jeffrey M. Bryan
                                                  United States District Court

9